*Brigido Lopez-Villa v. State*, No. 22, September Term, 2021.  Opinion by Hotten, J.

**CRIMINAL LAW — REVIEW — PRESENTATION AND RESERVATION IN LOWER COURT OF GROUNDS OF REVIEW — SUMMONING AND IMPANELING JURY**

For a party to preserve its objection to a trial court's omission or modification of proposed *voir dire* questions, the party must object or indicate disagreement at the time the trial court makes its ruling.  This is true unless the party is not given the opportunity to object at the time of the trial court's ruling, the trial court expressly recognizes the party's objection, or the party later retracts the waiver of the objection under certain circumstances.  Simply because a party expresses a desire to have certain questions posed prior to the court's ruling does not provide the court insight into the direction the party wishes the court to take at the time of its decision.  Trial strategies and legal opinions of counsel often change over the course of litigation, and the failure to object or express disagreement at the time of the court's ruling deprives the court with the opportunity to correct any perceived error in its action and deprives the opposing party with the opportunity to respond.

IN THE COURT OF APPEALS

OF MARYLAND

No. 22

September Term, 2021

_____

BRIGIDO LOPEZ-VILLA

v.

STATE OF MARYLAND

_____

Getty, C.J.,
*McDonald,
Watts,
Hotten,
Booth,
Biran,
Gould,

JJ.

_____

Opinion by Hotten, J.
Gould, J., concurs.
Biran, J., dissents.

_____

Filed: March 14, 2022

*McDonald, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In *Kazadi v. State*, 467 Md. 1, 48, 223 A.3d 554, 582 (2020), we held that a trial court is required, upon request, to ask potential jurors *voir dire* questions directed at a defendant's fundamental rights related to the burden of proof, the presumption of innocence, and the right not to testify. We held that this ruling applied retroactively to any case that was currently pending on appeal, so long as the relevant question was preserved for appellate review. *Id.* at 54, 223 A.3d at 586. The present appeal involves one such case that was pending when we decided *Kazadi* and in which a trial court declined a defendant's request to ask *voir dire* questions pertaining to such fundamental rights. We now consider whether defense counsel in this case properly preserved for appellate review, Petitioner Brigido Lopez-Villa's claim based on the trial court's failure to ask such questions now required by *Kazadi*. We granted *certiorari* to address the following question:

> Where Petitioner submitted a written request for *Kazadi* [*voir dire*] questions and the trial court "reviewed" the questions and ruled that it was "not inclined to ask" them "because the Court will instruct on those areas of law," did the Court of Special Appeals err in holding that Petitioner "failed to preserve his objection to the court's refusal to read his proposed [*voir dire*] questions," because he "failed to ask or tell the court that he objected to the failure to ask those specific questions," and because when, at the end of [*voir dire*], the trial court inquired, "[d]id I miss any questions . . . what you previously objected to, which I will preserve for the record," counsel responded "no"?

We answer in the negative and affirm the decision of the Court of Special Appeals.[1]

---

[1] In his petition for *certiorari*, Petitioner also asked, "[d]id the trial court err by not asking the venire panel certain requested [*voir dire*] questions that are required by *Kazadi v. State*, 467 Md. 1 (2020)?" Since we hold that Petitioner did not preserve this issue for appellate review, we decline to reach that question.

# FACTUAL AND PROCEDURAL BACKGROUND

## The Underlying Incident

Petitioner was convicted of one count of sexual abuse of a minor and four counts of third-degree sexual offense, following a four-day jury trial in the Circuit Court for Anne Arundel County. As aptly stated by the Court of Special Appeals, "the underlying facts are largely irrelevant to the issues on appeal. Suffice it to say that the evidence, when viewed in the light most favorable to the State, was sufficient to support the convictions. [Petitioner] does not contend otherwise." *Lopez-Villa v. State*, No. 240, Sept. Term, 2019, 2020 WL 6130896, at *1 (Md. Ct. Spec. App. Oct. 19, 2020).

## Legal Proceedings

### A. Circuit Court Proceeding

Prior to trial, both Petitioner and the State submitted proposed *voir dire* questions to the trial court. Petitioner submitted a total of twenty-six questions, the following two of which are presently at issue:

> 2. Do you understand a Criminal Defendant is presumed innocent and it is solely the burden of the State to produce evidence to convince you, the Jury unanimously, of the accused's guilt beyond a reasonable doubt?

> 22. Do you have any moral, ethical or religious convictions and/or opinions that would prohibit you from rendering a fair and impartial verdict in this case, and from following the Court's instructions on the Law, including[:] that the accused is presumed innocent, and can only be convicted upon competent evidence produced by the State, convincing you beyond a reasonable doubt of the Defendant's guilt?

The trial court reviewed the parties' proposed questions and, after discussion with counsel prior to *voir dire*, rejected some and accepted others from both sides. The

2

following colloquies took place between the court and defense counsel pertaining to the

two questions at issue here:

> THE COURT: . . . The Court has reviewed Defendant's [*voir dire*]. The Court would not be inclined to ask, because the Court believes it is duplicative with the State's questions, number 1. The Court is not inclined to ask question number 2, as the jury will be instructed as to the law.
>
> Question 3 is duplicative, 4 is duplicative, 5 is duplicative, 6 is duplicative.
>
> [Defense counsel], I don't know. The question about teachers or work in the education field. The jurors should have their occupations listed on the jury profile sheet. So do I need to ask question number 7? It should be on the profile sheet when we get it.
>
> [DEFENSE COUNSEL]: Judge, it should be, but it isn't always there. And the nature of this case, since we will have educators testifying, I think the Defendant has a right to know that.
>
> THE COURT: All right. I will ask it.
>
> [DEFENSE COUNSEL]: And if I can return to number 6?
>
> THE COURT: Yes.

*     *     *

> THE COURT: . . . The Court is not inclined to give [question] 22 as it is stated, because the Court will instruct on those areas of the law. But the Court would be inclined to give a modified 22 that indicates whether they have moral, ethical, religious convictions or opinions that would prevent them from returning a verdict.
>
> [DEFENSE COUNSEL]: Your Honor, I am sorry. What happened to 21, my 21?
>
> THE COURT: I am going to add it into 22. Okay?
>
> [THE STATE]: And I apologize, Your Honor. You may [have] just said it in 22. And you are just saying rendering a verdict, not fair and impartial?

THE COURT: No. I would change it to say prevent them from returning a verdict no matter what the circumstances of the case were.

[THE STATE] Thank you, Your Honor.

The court then proceeded with *voir dire*, during which it did not ask Petitioner's proposed question 2 and asked the following modified version of Petitioner's proposed question 22: "[i]s there any member of the jury panel who has any political, religious or other convictions that would prevent you from sitting as a juror in this case and returning a verdict based solely upon the law and the evidence?"

After the conclusion of *voir dire*, the court held a bench conference with counsel and the following ensued:

THE COURT: Did I miss any questions?

[THE STATE]: I don't believe so.

THE COURT: All right. Any additional questions from the State?

[THE STATE]: No, thank you.

THE COURT: [Defense Counsel], anything? --- what you previously objected to, which I will preserve for the record.

[DEFENSE COUNSEL]: No.

Following trial, the jury acquitted Petitioner of three counts of second-degree rape and two counts of second-degree sexual offense, but convicted him of one count of sexual abuse of a minor and four counts of third-degree sexual offense. He was sentenced to twenty years of imprisonment.

4

**B.** *Kazadi v. State*

Petitioner appealed his convictions to the Court of Special Appeals, which stayed the matter pending this Court's decision in *Kazadi v. State*, determining that case had bearing on Petitioner's appeal. *See Lopez-Villa*, 2020 WL 6130896, at *1. In *Kazadi*, we held that, "on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the long-standing fundamental principles of the presumption of innocence, the State's burden of proof, and the defendant's right not to testify." 467 Md. at 35–36, 223 A.3d at 574–75. In doing so, we overruled our previous precedent in *Twining v. State*, which was still good law at the time Petitioner's case was decided and which held that a trial court was not so required. 234 Md. 97, 100, 198 A.2d 291, 293 (1964). *Kazadi* expressly stated that its holding was applicable to any cases that were currently pending on direct appeal, so long as "the relevant question has been preserved for appellate review." 467 Md. at 47, 223 A.3d at 581.

**C. The Opinion of the Court of Special Appeals**

Following this Court's decision in *Kazadi*, the Court of Special Appeals considered Petitioner's appeal, but determined in an unreported opinion that his objection to the exclusion of his *voir dire* questions impacted by *Kazadi* was not preserved for appellate review.[2] *Lopez-Villa*, 2020 WL 6130896, at *1. In reliance on Maryland Rule 4-323(c), it

---

[2] Petitioner also asked the Court of Special Appeals whether the trial court abused its discretion in denying Petitioner's motion to strike four prospective jurors for cause.

(continued. . .)

5

determined that Petitioner's defense counsel did not "make[] known to the court . . . the objection to the action of the court." *Id.* at \*3 (quoting Md. Rule 4-323(c)). Specifically, the Court of Special Appeals stated that "defense counsel did not identify the questions that the court had failed to ask or tell the court that he objected to the failure to ask those specific questions. Instead, he asked what the court intended to do with some of his other proposed questions." *Id.* It also reasoned that Petitioner failed to preserve his objection when defense counsel requested no additional questions following *voir dire* after being prompted by the court. *Id.* In so finding, the Court of Special Appeals rejected Petitioner's argument that "any additional 'protest'" would have antagonized the court, as it found that Petitioner never made any initial protest to the court's actions. *Id.*

Following the decision of the Court of Special Appeals, Petitioner filed a petition for *certiorari* to this Court, which we granted on August 3, 2021. *Lopez-Villa v. State*, 475 Md. 698, 257 A.3d 1161 (2021).

## DISCUSSION

### Contentions of the Parties

Petitioner alleges that the Court of Special Appeals erred in finding that he waived his objection to the trial court's denial of his proposed *voir dire* questions 2 and 22, which he asserts are now required by *Kazadi*. He argues that his objection is preserved under Maryland Rule 4-323(c) because, by submitting written proposed *voir dire* questions to the

---

(. . . continued)
*Lopez-Villa*, 2020 WL 6130896, at \*1. It answered that question in the negative and Petitioner does not appeal that decision before this Court. *Id.* at \*6.

trial court, it understood the action that he "desired the court to take[,]" in satisfaction of the Rule. Petitioner alleges that no contemporaneous objection to the court's decision to exclude question 2 and modify question 22 was necessary under Md. Rule 4-323(c). Petitioner also argues that his objections were preserved based on the trial court's statement following *voir dire* that it would preserve what defense counsel had previously objected to, alleging that questions 2 and 22 were the only two questions proposed by Petitioner that the court declined to ask as written (apart from those questions that the court determined were duplicative).

The State replies that the Court of Special Appeals correctly concluded that Petitioner's objections were not preserved for appellate review, asserting that Petitioner never objected at any point to the court's respective rejection and modification of his proposed *voir dire* questions 2 and 22. As such, the State argues that Petitioner is barred from objecting to the trial court's treatment of those questions on appeal under Md. Rules 8-131(a) and 4-323(c). The State also argues that Petitioner further waived any alleged objection to the court's actions when the court asked following *voir dire* if he had missed any questions and defense counsel replied that he had not. It argues that the court's reference following *voir dire* to preserving what defense counsel had "previously objected to" did not refer to the court's omission and modification of Petitioner's proposed questions 2 and 22, but instead referred to Petitioner's anticipatory objection to the State's request for alternating preemptory strikes, which the State asserts was Petitioner's only objection on the record.

**Standard of Review**

"An appellate court reviews for abuse of discretion a trial court's decision as to whether to ask a *voir dire* question." *Pearson v. State*, 437 Md. 350, 356, 86 A.3d 1232, 1235 (2014). We have held that Article 21 of the Maryland Declaration of Rights "guarantees a defendant the right to examine prospective jurors to determine whether any cause exists for a juror's disqualification." *Bedford v. State*, 317 Md. 659, 670, 566 A.2d 111, 116 (1989). As such, the "[f]ailure to allow questions that may show cause for disqualification is an abuse of discretion constituting reversible error." *Marquardt v. State*, 164 Md. App. 95, 144, 882 A.2d 900, 929 (2005) (citing *Casey v. Roman Catholic Archbishop of Balt.*, 217 Md. 595, 605, 143 A.2d 627, 631 (1958)). Yet, it remains a requirement that "[t]o preserve any claim involving a trial court's decision about whether to propound a [*voir dire*] question, a defendant must object to the court's ruling." *Foster v. State*, 247 Md. App. 642, 647, 239 A.3d 741, 744 (2020), *cert. denied sub nom. State v. Foster*, 475 Md. 687, 257 A.3d 1156 (2021).

Petitioner's question requires us to interpret the Maryland Rules. "[T]he principles applied to statutory interpretation are also used to interpret the Maryland Rules." *Lisy Corp. v. McCormick & Co.*, 445 Md. 213, 221, 126 A.3d 55, 60 (2015) (quoting *Duckett v. Riley*, 428 Md. 471, 476, 52 A.3d 84, 87 (2012)). We begin with the plain language of the rule, and "[i]f that language is clear and unambiguous, we need not look beyond the provision's terms to inform our analysis[.]" *Duckett*, 428 Md. at 476, 52 A.3d at 87 (quoting *Davis v. Slater*, 383 Md. 599, 604–05, 861 A.2d 78, 81 (2004)).

[H]owever, the goal of our examination is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular . . . part of the Rules. To that end, we must consider the context in which the . . . rule appears, including related statutes or rules, and relevant legislative history. Also, where the language of the rule is ambiguous, external evidence may be referred to for discerning the purpose of the legislature, including the bill's title or function paragraphs, relevant case law, and secondary sources.

*Id.* at 476–77, 52 A.3d at 87 (quoting *Davis*, 383 Md. at 604–05, 861 A.2d at 81).

### The Preservation Requirement of Maryland Rule 4-323(c)

Maryland Rule 4-323(c) governs the method through which a party must make an objection to rulings and orders other than evidentiary rulings, and states:

For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection.

Maryland Rule 4-323(d) further elaborates that, "[a] formal exception to a ruling or order of the court is not necessary."

Petitioner is incorrect that merely submitting proposed *voir dire* questions, which are later rejected or modified by the trial court, is sufficient to satisfy the preservation requirement of Md. Rule 4-323(c). The plain language of the Rule requires that "a party, *at the time the ruling or order is made or sought*, makes known to the court the action that the party desires the court to take or the objection to the action of the court." Md. Rule 4-323(c) (emphasis added). This requirement is excused when "a party has no opportunity

9

to object to a ruling or order *at the time it is made*[.]" *Id.* (emphasis added). Thus, the plain language of Md. Rule 4-323(c) twice references that an objection or indication of disagreement must be made contemporaneous with the court's action. This requirement holds unless the party does not have the opportunity to object, as the Rule expressly recognizes, unless the court expressly advises the party that their objection is noted, *see, e.g.*, *Baker v. State*, 157 Md. App. 600, 609, 853 A.2d 796, 801 (2004) (holding an objection to omission of proposed *voir dire* questions was preserved where defense counsel declined to be heard on the omission of the questions but "requested that a copy of his proposed *voir dire* be put into the court's file[]" and the court "told defense counsel that a copy was already in the court file and noted the exceptions[]"), or unless the party later retracts its waiver of the objection under certain circumstances, *see Brice v. State,* 225 Md. App. 666, 688, 126 A.3d 246, 259 (2015) (holding that the trial court erred in not permitting retraction of a waiver where the waiver "(1) would not have prevented the selection of a jury from the venire remaining at the time of the retraction, (2) would not have prejudiced the State in its approach to *voir dire*, and (3) would not have amounted to a trial tactic aimed at manipulating the judicial process[]") (internal quotations omitted).

Petitioner argues that a contemporaneous objection or expression of disagreement is not required under Md. Rule 4-323(c), because submitting written proposed *voir dire* questions to the trial court prior to its decision, "makes known to the court the action that the party desires the court to take[,]" in satisfaction of the Rule. We are not persuaded. Strategies and positions of a party often change over the course of litigation and even within

10

the course of a conversation during trial. *Cf. Brown v. State*, 169 Md. App. 442, 459, 901 A.2d 846, 856 (2006) ("In regard to the issue of lawyerly diligence, defense counsel had a good reason, based on trial tactics, not to object to the court's change of the pattern jury instruction."). A failure to object in the face of the court's ruling could indicate that the party has abandoned their previous position or acquiesced with the court's reasoning for rejecting the proposed question. Absent a contemporaneous objection or expression of disagreement, the court has no way of knowing "the action that the party desires the court to take[,]" Md. Rule 4-323(c), and may very well believe that defense counsel agrees with its rejection or modification of its previously submitted proposed *voir dire* questions.

The requirement of such a contemporaneous objection is likewise supported by the purpose of the preservation rules. We have explained that "[t]he rules for preservation of issues have a salutary purpose of preventing unfairness and requiring that all issues be raised in and decided by the trial court[.]" *Conyers v. State*, 354 Md. 132, 150, 729 A.2d 910, 919 (1999). Preservation rules like Md. Rule 4-323(c) are designed to provide fairness to the trial court, which should be permitted "to resolve as many issues as possible so as to avoid unnecessary appeals." *In re A.B.*, 230 Md. App. 528, 535, 148 A.3d 371, 375 (2016). The Rule is also designed to provide fairness to opposing parties, who should be afforded the opportunity to respond to any alleged error in the court's ruling in their favor. *See In re Kaleb K.,* 390 Md. 502, 513, 889 A.2d 1019, 1025 (2006) ("[T]he application of the rule limiting the scope of appellate review to those issues and arguments raised in the court below 'is a matter of basic fairness to the trial court and to opposing counsel, as well as

11

being fundamental to the proper administration of justice.'") (summarizing *Medley v. State*, 52 Md. App. 225, 231, 448 A.2d 363, 366 (1982)). Without a contemporaneous objection or expression of disagreement, the trial court is unable to correct, and the opposing party is unable to respond to, any alleged error in the action of the court.

The case law relied upon by Petitioner does not reflect otherwise. In *Newman v. State*, the Court of Special Appeals held that the rejection of proposed *voir dire* questions was preserved for appellate review where a party made two objections to the court's failure to include its proposed questions, "first in writing and second at the close of the questioning section of [*voir dire*]." 156 Md. App. 20, 50, 845 A.2d 71, 89 (2003), *rev'd on other grounds*, 384 Md. 285, 863 A.2d 321 (2004). Defense counsel in *Baker*, likewise, effectively made clear his disagreement with a court ruling by requesting that a copy of his proposed instructions be put in the court's file after the court rejected some of his proposed instructions and the court expressly noted his objection. 157 Md. App. at 609–10, 853 A.2d at 801–02. The same is true of *Smith v. State*, where the trial court asked the parties if they had objections to any of their proposed questions being skipped by the court during *voir dire*, to which defense counsel expressly challenged the omission of a question which later became the subject matter of his appeal. 218 Md. App. 689, 699–700, 98 A.3d 444, 450 (2014). Finally, in *Marquardt v. State,* the Court of Special Appeals found that an appellant had successfully preserved an objection under Md. Rule 4-323 when, "after being asked if there were any problems with [*voir dire*], appellant told the [trial] court that he objected to his proposed questions 11, 12, 14, and 15 not being asked." 164 Md. App. 95,

143, 882 A.2d 900, 928 (2005). *Newman*, *Baker*, *Smith*, and *Marquardt* stand for the proposition that, pursuant to Md. Rule 4-323(d), "[a] formal exception to a ruling or order of the court is not necessary[,]" and a party may express their disagreement with a court's actions in a myriad of ways. They do not stand for the proposition, as Petitioner asserts, that Md. Rule 4-323(c) does not require a party to object or indicate its disagreement at all when the court makes its decision.

In *Brice*, like in the case at bar, defense counsel submitted a written list of proposed *voir dire* questions, some of which were omitted by the trial court when questioning the jury. 225 Md. App. at 667, 126 A.3d at 252–53. There, the Court of Special Appeals found that by failing to object to the trial court's omission of those questions when given the opportunity by the trial court, defendant waived any objection to the court's omission of those questions, and that such objection was preserved *only* because defense counsel later retracted that waiver during the court's *voir dire* questioning. *Id.* at 679–80, 126 A.3d at 254. The Court of Special Appeals correctly noted that

> [a]n appellant preserves the issue of omitted [*voir dire*] questions under [Md.] Rule 4-323 by telling the trial court that he or she objects to his or her proposed questions not being asked. If a defendant does not object to the court's decision to not read a proposed question, he cannot complain about the court's refusal to ask the exact question he requested.

*Id.*, 126 A.3d at 253–54 (internal citations and quotations omitted). This preservation requirement was expressly maintained by *Kazadi*. 467 Md. at 47, 223 A.3d at 581 ("[W]e determine that our holding applies to this case and any other cases that are pending on direct appeal when this opinion is filed, where the relevant question has been preserved for

13

appellate review."); *see also Kumar v. State,* No. 21, Sept. Term, 2021, 2021 WL 5993511, at *9 (Md. Dec. 20, 2021) (finding an objection to the trial court's omission of *Kazadi voir dire* questions preserved where defense counsel asked the trial court to note his "continuing exception to its refusal" to ask such questions).

## Application to this Case

Unlike the appellants in *Newman*, *Baker*, *Smith*, and *Marquardt*, defense counsel in the case before us neither made an objection nor expressed any indication of disagreement when the court stated prior to *voir dire* that it was "not inclined"[3] to give Petitioner's proposed question 2 or proposed question 22 as written. Instead, defense counsel immediately asked the court about its treatment of different questions he had proposed, but did not mention the court's rejection of question 2 or modification of question 22 at all. Petitioner did not merely object or disagree informally or without explanation; he did not object or disagree with the court's ruling *at all*. The fact that the court was aware of Petitioner's proposed questions and made rulings contrary to them does not mean that Petitioner made the court aware that he objected or disagreed with the court's ruling. Indeed, the court could have reasonably perceived that, by failing to object or indicate his

---

[3] While the trial court expressed this ruling in tentative terms, we hold that it is clear from the context that the court was making a definitive ruling, requiring an objection or expression of disagreement from Petitioner under Md. Rule 4-323(c). Nearly all of the court's decisions on the parties' proposed questions were expressed in terms of the court being "inclined" or "not inclined" to ask the questions. Even if we determined that such statements were not definitive rulings, they were certainly invitations to defense counsel to express disagreement with the court's "inclination" if it wished, and when defense counsel failed to do so, the "inclination" became definitive.

14

disagreement, Petitioner had abandoned those claims or ultimately agreed with the court's

determination that they were unnecessary because the jury would be instructed on the law.

Likewise, neither are Petitioner's preservation claims redeemed by defense

counsel's discussion with the trial court following *voir dire*. As stated above, at the

conclusion of *voir dire*, the court asked the State whether it had missed any questions, to

which the State responded that it had not. The court then turned to defense counsel and

asked: "[Defense Counsel], anything? --- what you previously objected to, which I will

preserve for the record[,]" to which defense counsel replied "No." Petitioner argues that

the court's reference to what defense counsel "previously objected to" must have been

referring to the court's rejection of question 2 and modification of question 22, because

those were the only questions that the court declined to ask as proposed by Petitioner.

Petitioner's argument fails for several reasons. In the first place, question 2 and question

22 were not the only questions proposed by Petitioner that the court declined to ask. It also

declined to ask Petitioner's proposed questions 1, 3, 4, 5, 6, 10, 15, 16, 17, 18, and 19,

because it determined that they were duplicative of, or incorporated in, other questions

proposed by the State or Petitioner that the court had already agreed to ask.

Second, it is unlikely that the court's reference to what defense counsel "previously

*objected* to," (emphasis added), was intended to reference the court's treatment of

questions 2 and 22, because, as discussed above, Petitioner never objected to the court's

15

respective omission and modification of those questions.[4]  Instead, it is more plausible that the court was referring to the only thing Petitioner *had* objected to, which was an anticipatory objection of the State's request for alternating strikes.[5]  Rather, we conclude

---

[4] Petitioner indeed concedes that he failed to object to questions 2 and 22 being asked, but argues instead that his claims are preserved under Md. Rule 4-323 because he had made known to the court the action that he desired the court to take.

[5] Immediately prior to *voir dire*, the trial court had the following colloquy with defense counsel:

> [DEFENSE COUNSEL]: Judge, on that note, if I may? I had intended to ask the Court to permit – I understand the rule as a simultaneous selection of the jury as opposed to alters.  I think with the crowd in here that is a problem, and *I am going to make an objection to* – I understand the rule of 318, if a party requests it, and I see [the State], I think, nodding that she is requesting alternating strikes.
>
> But I suggest that in this case, particularly with the crowd, particularly because that mode --
>
> THE COURT: You want to pick a juror right then and there?
>
> [DEFENSE COUNSEL]: No, Judge.  What I am asking is after all of the strikes for cause and we are left with a room full of people, you tell us whether we are picking from the top or the bottom of the list.
>
> THE COURT: We are going to pick from the top.
>
> [DEFENSE COUNSEL]: And without calling each individual juror up, that I exercise my 10 or less, the State exercises their 10 or less.  The first 12 to go in the box, that is the jury.  I think it is –
>
> \*      \*      \*
>
> THE COURT: We are not there yet.  I understand what you are asking.  I will research it, and we will get there.  Okay?

(continued. . .)

16

that defense counsel's response of "no" when asked by the trial court following *voir dire* if the court had missed any questions was another instance of Petitioner waiving his right to object to the trial court's omission and modification of his proposed questions allegedly impacted by *Kazadi*.[6] *See Hayes v. State*, 247 Md. App. 252, 276, 236 A.3d 680, 694 (2020) ("If an opportunity to object presents itself and a defendant fails to object to a court's refusal to read a proposed question, the objection is waived.").[7]

---

(. . . continued)
 [DEFENSE COUNSEL]: Thank you. (Emphasis added).

 [6] To the extent that the court's reference to "questions" he had missed at the beginning of the colloquy could be considered ambiguous because defense counsel's only previous objection did not refer to a missed *voir dire* question, defense counsel had the burden to make clear what action of the court he objected to in order to preserve the issue for appellate review. *See* Md. Rule 4-323(c).

 [7] The Dissent argues that we should consider Petitioner's *Kazadi* claims preserved based on the court's statement that it would preserve what defense counsel had "previously objected to[.]" *Lopez-Villa v. State*, No. 22 Sept. Term, 2021, op. at 3–12 (Biran, J., dissenting). The Dissent asserts that we must view the matter from the point of view of a reasonable defense attorney, and in this case, "a reasonable defense attorney could have concluded that the trial court was effectively saying: 'I already understand that you want me to ask the nonduplicative questions as you proposed them; you do not have to tell me that again. Is there anything else besides those questions that you want me to ask?'" *Id.* at 9. We do not think a reasonable defense attorney could conclude that a trial court's reference to what had been previously objected to could refer to an issue about which defense counsel had never objected. The Dissent asserts that, in circumstances where "only one party has requested a question and the court declines to give it[,] . . . a trial court reasonably may expect that the requesting party will disagree with the court's decision." *Id.* at 8 n.4. This inference is at odds with our understanding that without a contemporaneous objection by trial counsel, the trial court could fairly conclude that defense counsel has abandoned their proposed question or agrees with the trial court's reasoning as to why it need not be asked. We therefore do not agree that it would have been reasonable for Petitioner's defense attorney to assume, in spite of a failure to make any objection, the trial court to have effectively said "I already understand that you want

(continued. . .)

For us to hold otherwise and determine that Petitioner's claims are preserved for appellate review simply because he submitted a written list of proposed questions that was not accepted in full by the court would largely erase Md. Rule 4-323(c)'s preservation requirement in the context of *voir dire* questions. Under Petitioner's interpretation, any question proposed by a party and not accepted, as written, by the trial court would be preserved for appellate review, regardless of whether the party made any indication to the trial court that it disagreed with the court's decision when it was made. In Petitioner's case, it would mean that Petitioner had also preserved for appellate review any objection to the court's findings that 1, 3, 4, 5, 6, 10, 15, 16, 17, 18, and 19 were duplicative, even though Petitioner never made any such claim at the time the court made that determination. Such an interpretation is not aligned with the text of Md. Rule 4-323(c), does not advance the Rule's purpose of providing fairness to the trial court and opposing parties, and is not supported by our case law. Accordingly, we decline to find that Petitioner's claims, based on the court's treatment of his questions allegedly impacted by *Kazadi*, are preserved for appellate review under Md. Rule 4-323(c).

## Maryland Rule 8-131(a)

We likewise cannot determine that Petitioner's claims of preservation are salvaged by the general preservation rule in Md. Rule 8-131(a). Maryland Rule 8-131(a) provides:

---

(. . .continued)
me to ask the nonduplicative questions as you proposed them[.]" *See id.* at 9. To hold otherwise would prevent trial courts and any reviewing court from ever being certain whether a defendant has actually abandoned their position on a question.

18

> The issues of jurisdiction of the trial court over the subject matter and, unless waived under [Md.] Rule 2-322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

We have held that, "Md. Rule 8-131(a) requires an appellant who desires to contest a court's ruling or other error on appeal to have made a *timely objection* at trial. The failure to do so bars the appellant from obtaining review of the claimed error, as a matter of right." *Robinson v. State*, 410 Md. 91, 103, 976 A.2d 1072, 1079 (2009) (emphasis added). This is because, "[f]airness and the orderly administration of justice is advanced by requiring counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings." *Id.* at 103, 976 A.2d at 1079 (cleaned up). As discussed above, Petitioner failed to make a timely objection, or object at all, to the trial court's omission of his proposed question 2 and modification of his proposed question 22. As such, Petitioner has no right to appellate review under Md. Rule 8-131(a), and we decline to exercise our discretion to provide such a review. *See Chaney v. State*, 397 Md. 460, 468, 918 A.2d 506, 511 (2007) (explaining that appellate courts should "rarely exercise" their discretion to review unpreserved issues under Md. Rule 8-131(a), "as considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial court's ruling, action, or conduct be presented in the first instance to the trial court"); *see also Robinson*, 410 Md. at 104, 976 A.2d at 1079 ("Such prerogative to review an unpreserved claim of

error, however, is to be rarely exercised and only when doing so furthers, rather than undermines, the purposes of the rule.").

## CONCLUSION

Petitioner failed to preserve his claims based on *Kazadi* by failing to object when the trial court informed him that it was not inclined to ask his proposed *voir dire* questions, and by responding "[n]o" when the trial court asked if he had missed anything during *voir dire*. Petitioner's desired actions were not made known to the court at the time of its decision merely because Petitioner had submitted, at an earlier time, a list of proposed questions to the court. Such an action is insufficient to satisfy either the plain language requirements of Md. Rule 4-323(c) or the Rule's purpose of providing the trial court with the opportunity to correct, and the opposing party the opportunity to respond to, any perceived errors. Neither is it sufficient to preserve Petitioner's claims under Md. Rule 8-131(a).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

20

Circuit Court for Anne Arundel County
Case No. C-02-CR-18-001709
Argued: December 2, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 22

September Term, 2021

_____

BRIGIDO LOPEZ-VILLA

v.

STATE OF MARYLAND

_____

Getty, C.J.
*McDonald
Watts
Hotten
Booth
Biran
Gould,

JJ.

_____

Concurring Opinion by Gould, J.

_____

Filed: March 14, 2022

*McDonald, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Notwithstanding the compelling arguments made by the Dissent, I am persuaded by the Majority's opinion that Mr. Lopez-Villa did not preserve an objection to the trial court's failure to give his proposed voir dire questions 2 and 22. I write separately to express why, in addition to the reasons set forth in the Majority's opinion, I believe the Majority reached the right result.

Even if we were inclined to find that Mr. Lopez-Villa preserved the objections to the court's failure to ask questions 2 and 22, in my view, those questions do not survive scrutiny on the merits. The point of *Kazadi* is that a defendant is entitled to ferret out a prospective juror's "inability or unwillingness to follow jury instructions" on the "presumption of innocence, the State's burden of proof, and the defendant's right not to testify." *Kazadi v. State*, 467 Md. 1, 41-42, 36 (2020).

Mr. Lopez's proposed question 2 asks whether the prospective jurors "understand" that the defendant is presumed innocent and that it's the State's burden to prove the defendant's guilt beyond a reasonable doubt. *Kazadi* does not apply to that question. *Kazadi* doesn't entitle the defendant to a jury consisting of individuals who, when they are selected for the venire, are already possessed with an understanding of these fundamental constitutional rights. Rather, *Kazadi* is concerned with the jurors' willingness to protect those rights when instructed by the court to do so. *See Kazadi*, 467 Md. at 44-45. So, even if Mr. Lopez-Villa had preserved *that* question, the failure to ask it was not reversible error because it was not required under *Kazadi*.

Mr. Lopez-Villa's proposed question 22 has other problems. Mr. Lopez-Villa phrased question 22 as follows:

Do you have any moral, ethical or religious convictions and/or opinions that would prohibit you from rendering a fair and impartial verdict in this case, and from following the Court's instructions on the Law, including[] that the accused is presumed innocent, and can only be convicted upon competent evidence produced by the State, convincing you beyond a reasonable doubt of the Defendant's guilt.

For starters, this question is a grammatical mess and contains multiple subparts. This Court stated in *Kazadi* that "[a] trial court is not required to use any particular language when complying with a request to ask during voir dire whether any prospective jurors are unwilling or unable to comply with the jury instructions on the presumption of innocence, the burden of proof, and the defendant's right not to testify." 467 Md. at 47. But the Court provided this guidance: "The questions should concisely describe the fundamental right at stake and inquire as to a prospective juror's willingness and ability to follow the trial court's instruction as to that right." *Id.* As worded, question 22 does not comply with this standard.

Moreover, question 22 is defective under *Pearson v. State*, because it impermissibly required the prospective jurors to decide for themselves whether they had any convictions or opinions that would have prevented them from rendering a fair and impartial verdict. *Pearson v. State*, 437 Md. 350, 361-64 (2014). And while it is true that the court used a modified version of question 22 which possibly avoided a *Pearson* problem,[1] the unused

---

[1] The modified version used by the court was: "Is there any member of the jury panel who has any political, religious or other convictions that would prevent you from sitting as a juror in this case and returning a verdict based solely upon the law and the evidence?"

parts of question 22—i.e., the parts that implicate *Kazadi*—would need to be re-worded and broken up into multiple questions.

One might respond that the trial judge on remand could revise question 2 and the remaining parts of question 22 to fix the problems discussed above. True enough, but that supports the Majority's conclusion on preservation. Such revisions are generally the product of discussions among the trial judge and counsel when a timely objection is raised. Because Mr. Lopez-Villa remained silent after the court said it was not inclined to ask questions 2 and 22, neither the State nor the trial court had any reason or opportunity to consider if there were other problems with questions 2 and 22, and if so, how to fix them.

Similarly, Mr. Lopez-Villa's silence deprived the State of the opportunity to consent to the questions, which, in turn, may have persuaded the trial court to reconsider its initial inclination not to ask them. After all, such questions were not prohibited before *Kazadi*:

> By making such *voir dire* questions mandatory on request, we help ensure that a juror's inability or unwillingness to follow instructions involving these three important fundamental rights will be discovered before trial, and that all defendants—**not just ones whose trials are presided over by circuit court judges who chose to exercise the discretion to grant requests to ask such *voir dire* questions**—will have the opportunity to move to strike prospective jurors for cause on the ground of an unwillingness or inability to adhere to these fundamental rights.

*Id*. at 46 (emphasis added).

Put simply, Mr. Lopez-Villa's silence foreclosed the possibility of a discussion that could have resulted in revisions to questions 2 and 22 that would have satisfied both the State and the trial court. Thus, in my view, even if the issues were preserved, our review

- 3 -

would have to be cabined to the questions as written.  And, as written, the two questions were inappropriate for the reasons set forth herein.

Circuit Court for Anne Arundel County
Case No. C-02-CR-18-001709
Argued: December 2, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 22

September Term, 2021

———————————————————

BRIGIDO LOPEZ-VILLA

v.

STATE OF MARYLAND

———————————————————

Getty, C.J.
*McDonald
Watts
Hotten
Booth
Biran
Gould,

JJ.

———————————————————

Dissenting Opinion by Biran, J.

———————————————————

Filed: March 14, 2022

*McDonald, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

I agree with much of the well-written Majority Opinion. However, in concluding that Petitioner Brigido Lopez-Villa's claim of error under *Kazadi v. State*, 467 Md. 1 (2020), is not preserved for appellate review, despite the unique circumstances of this case, the Majority holds defense trial counsel to an unrealistic and unfair standard. The consequence is that Lopez-Villa is unjustly deprived of the benefit of this Court's decision in *Kazadi*. Therefore, I must respectfully dissent.

**I**

In *Kazadi*, defense counsel included several questions concerning the presumption of innocence and the prosecution's burden of proof in their proposed *voir dire* questions:

> The Court will instruct you that the State has the burden of proving the Defendant guilty of the offenses charged beyond a reasonable doubt. Are there any of you who would be unable to follow and apply the Court's instructions on reasonable doubt in this case?
>
> Is there any member of the [ ] jury panel who would hesitate to render a verdict of not guilty if you had hunch that the Defendant had committed the alleged crime, but were not convinced of that fact beyond reasonable doubt?
>
> The Court will instruct you that the Defendant is presumed of be innocent of the offenses charged throughout the trial unless and until the Defendant is proven guilty beyond a reasonable doubt. Is there any member of the jury panel who would be unable to give the Defendant the benefit of the presumption of innocence?

*Kazadi*, 467 Md. at 9-10. The trial court declined to ask these questions (as well as a proposed question concerning the defendant's right not to testify). *See id.* at 10.

When Kazadi's case came before this Court, we overruled *Twining v. State*, 234 Md. 97 (1964), and held that, "on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the

long-standing fundamental principles of the presumption of innocence, the State's burden of proof, and the defendant's right not to testify." *Id.* at 35-36. We reached this conclusion because of the importance of these rights in ensuring a fair trial:

> Because these long-standing fundamental rights are critical to a fair jury trial in a criminal case, on request, a defendant should be entitled to *voir dire* questions that are aimed at uncovering a juror's inability or unwillingness to honor these fundamental rights. By making such *voir dire* questions mandatory on request, we help ensure that a juror's inability or unwillingness to follow instructions involving these three important fundamental rights will be discovered before trial, and that all defendants – not just ones whose trials are presided over by circuit court judges who chose to exercise the discretion to grant requests to ask such voir dire questions – will have the opportunity to move to strike prospective jurors for cause on the ground of an unwillingness or inability to adhere to these fundamental rights.

*Id.* at 46.

We stated that our holding would apply to Kazadi's case "and any other cases that are pending on direct appeal when this opinion is filed, where the relevant question has been preserved for appellate review." *Id.* at 47.

In his proposed *voir dire* question 2, Lopez-Villa's defense counsel requested that the trial court ask: "Do you understand a Criminal Defendant is presumed innocent and it is solely the burden of the State to produce evidence to convince you, the Jury unanimously, of the accused's guilt beyond a reasonable doubt?" And in his proposed question 22, defense counsel requested that the trial court ask: "Do you have any moral, ethical or religious convictions and/or opinions that would prohibit you from rendering a fair and impartial verdict in this case, and from following the Court's instructions on the Law, including; that the accused is presumed innocent, and can only be convicted upon

- 2 -

competent evidence produced by the State, convincing you beyond a reasonable doubt of the Defendant's guilt?"

It is clear that defense counsel requested questions covering two of the three fundamental rights at issue in *Kazadi* and that the trial court declined to ask those questions. Thus, there was a *Kazadi* error in the *voir dire* at Lopez-Villa's trial that necessitates a new trial if Lopez-Villa sufficiently preserved the claim of error for appellate review.[1] As discussed below, I would hold that the *Kazadi* question is preserved in the unique circumstances of this case.

## II

I agree with the Majority that a pretrial written request for a particular *voir dire* question does not, by itself, preserve a claim of error for appellate review if the trial court declines to put the question to potential jurors. Maryland Rule 4-323(c) provides: "For

---

[1] In his Concurring Opinion, Judge Gould acknowledges that parts of defense counsel's proposed question 22 "implicate *Kazadi*," but posits that those portions of the proposed instruction "would need to be re-worded and broken up into multiple questions" to comply with *Pearson v. State*, 437 Md. 350, 361-64 (2014). Concurring Op. at 2-3. Thus, Judge Gould would hold that, "even if the issues were preserved, our review would have to be cabined to the questions as written." Concurring Op. at 3-4. Notably, the State did not argue in the Court of Special Appeals and has not argued before this Court that, if Lopez-Villa preserved a *Kazadi* claim of error, Lopez-Villa would not be entitled to relief under *Kazadi* due to a *Pearson* problem. And that is for good reason. It is clear from the record that the trial court and defense counsel were well aware of *Pearson*, collectively referring to *Pearson* four times during the discussion concerning proposed *voir dire* questions. Indeed, as Judge Gould notes, the trial court modified defense counsel's proposed question 22 to avoid a *Pearson* problem with respect to the non-*Kazadi*-related part of the question. *See* Concurring Op. at 2-3 & n.1. Thus, it is reasonable to assume that, if the trial court had been inclined to ask the potential jurors whether they could follow the court's instructions concerning the fundamental rights at issue in *Kazadi*, the trial court would have ensured that such a question also complied with *Pearson*.

purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court." Thus, either after the trial court told defense counsel that the court was "not inclined" to ask defense counsel's proposed questions 2 and 22, or after the court completed the *voir dire* questions without asking questions 2 and 22, it was incumbent upon defense counsel to "make[] known to the court" that he still wanted the court to ask his questions 2 and 22 if that indeed was the case.

It is clear that defense counsel did not state any position with respect to his proposed questions 2 and 22 after the trial court said it was "not inclined" to ask those questions. Therefore, the resolution of the preservation issue turns on the interaction between the trial court and defense counsel after the court completed its questioning without having asked questions 2 and 22. At that point, the following discussion occurred:

THE COURT:      Okay. Come on up.

(Whereupon, a Bench Conference followed.)

THE COURT:      Did I miss any questions?

[STATE]:      I don't believe so.

THE COURT:      All right. Any additional questions from the State?

[STATE]:      No, thank you.

THE COURT:      [Defense counsel], anything? — what you previously objected to, which I will preserve for the record.

[DEFENSE]:      No.

- 4 -

In my view, after the trial court told defense counsel that "what you previously objected" would be "preserved for the record," defense counsel reasonably could believe that the trial court understood the defense still wanted the court to ask questions 2 and 22, as trial counsel had proposed them. That being the case, I would hold that defense counsel was not required to do anything else to preserve a claim of error relating to questions 2 and 22, and that counsel's answer "No" was not a waiver of such a claim of error.

Importantly, the trial court specifically asked the parties about "additional questions" they wanted the court to put to the potential jurors. The court first asked the prosecutor, "Any additional questions from the State?" After the prosecutor replied, "No, thank you," the court immediately turned to defense counsel and began his inquiry by asking, "anything?" Reasonable defense counsel would understand that question to be asking – just as the court a moment earlier had asked the prosecutor – if defense counsel wished the court to ask "[a]ny additional questions."

If the trial court had ended its inquiry to defense counsel after "anything?" and if defense counsel had then responded, "No," I would agree with the Majority's disposition of this case. However, the trial court changed the landscape by stating that what defense counsel "previously objected to" the court "will preserve for the record." It was in this context that defense counsel replied, "No."

It is true, as the Majority explains, that during the discussion about *voir dire* immediately before the potential jurors were brought into the courtroom for questioning, defense counsel did not state an objection regarding question 2 or 22 or any of the other questions that the court indicated it would ask or not ask the potential jurors. This begs the

question, then, to what the trial court was referring when the court told defense counsel after asking the *voir dire* questions, "what you previously objected to, which I will preserve for the record."

The Majority finds it "unlikely" that the trial court was referring to "the court's treatment of questions 2 and 22," op. at 15, because the court used the word "objected" and defense counsel had not stated an objection regarding those questions during the earlier discussion of *voir dire*. Thus, the Majority opines that "it is more plausible" that the court was referring to an objection defense counsel expressly made during the earlier discussion, namely, an anticipatory objection to the State's request for alternating peremptory strikes. Op. at 16.

In my view, the trial court was not referring to defense counsel's anticipatory objection concerning alternating strikes in the course of inquiring whether defense counsel wished the court to ask the potential jurors any additional questions. That would have been a non sequitur and premature.[2] Rather, I believe there are only two plausible explanations

---

[2] After defense counsel made an anticipatory objection to alternating strikes, the trial court stated, "We are not there yet. I understand what you are asking. I will research it, and we will get there." The trial court still had not "gotten there," and therefore had not ruled on the issue of alternating strikes, when the court asked defense counsel if he had any additional questions he wanted the court to ask the potential jurors. In the absence of a ruling concerning alternating strikes, there was no reason for the court to refer to defense counsel's having "previously objected" to alternating strikes and preserving that objection for the record. Relatedly, I disagree with the Majority's suggestion that "the court's reference to 'questions' he had missed at the beginning of the colloquy" perhaps could be considered "ambiguous." Op. at 17 n.6. There was nothing ambiguous about what the trial court was attempting to discover in that colloquy. The court had just finished putting the *voir dire* questions to the potential jurors and was inquiring whether either the prosecutor or defense counsel wanted him to ask any additional questions.

for the trial court's reference to defense counsel having "previously objected": (1) either the trial court was indicating that it understood defense counsel not to have abandoned his request from earlier that morning that the court give questions 2 and 22 as counsel proposed them, and used "previously objected" to describe its interpretation of defense counsel's lack of assent to the court's decisions;[3] or (2) the trial court erroneously believed that defense counsel had expressly objected with respect to the court's decision to ask or not to ask a question during the discussion that had occurred shortly beforehand.

I find it difficult to believe that the experienced and meticulous trial judge who presided over Lopez-Villa's trial meant to reference an express objection to one or more questions, when defense counsel made no such express objection during the discussion that occurred that same morning. Nor would the trial court have referred to defense counsel having "previously objected" if the court did not believe there to be at least one question upon which there was a continuing disagreement between the court and counsel. Thus, I believe the only explanation for the trial court's statement is that: (1) the court recognized that defense counsel disagreed with the court's decisions to the extent the court declined to give defense counsel's requested questions that were not duplicative of questions the court

---

[3] Notably, at one point during the pretrial discussion concerning *voir dire* questions, defense counsel affirmatively assented to a decision of the trial court that was contrary to the defense's initial request: defense counsel agreed with the trial court that one of counsel's proposed questions could be reserved for potential follow-up if there was a positive response to another question.

did ask; and (2) the court intended to obviate the need for defense counsel to reiterate that he wanted the trial court to ask the non-duplicative questions.[4]

Ultimately, however, it should not matter what the Majority believes or what I believe the trial court was referring to when it spoke of defense counsel having "previously objected" and told counsel that it would "preserve" such objection(s) "for the record." In my view, the only thing that matters is what trial counsel reasonably could have believed when the court made that statement. Of course, we do not know – and, in the absence of testimony by trial counsel at a postconviction hearing, we cannot know – what defense counsel actually believed the trial court was referring to. Nor can we know how defense counsel would have answered the trial court's inquiry about any "additional" questions

_____

[4] The Majority notes that the trial court declined to ask Lopez-Villa's proposed questions 1, 3, 4, 5, 6, 10, 15, 16, 17, 18, and 19, because the court determined that they were duplicative of, or otherwise covered by, other questions proposed by the State or Lopez-Villa that the court had already agreed to ask. *See* op. at 15. The Majority's point is that we cannot assume that the trial court's reference to "what you previously objected" was tied to questions 2 and 22. But there realistically was nothing else that the trial court could have been referring to besides questions 2 and 22. It is very doubtful that the trial court believed there was any remaining disagreement between the court and defense counsel with respect to any questions that were covered by other questions the court had agreed to ask. It usually is the case that the prosecution's and the defense's proposed *voir dire* questions substantially overlap. After the trial court confirms that it will ask those questions that both parties agree in substance should be asked, it is reasonable for the trial court to assume (in the absence of express objection) that neither party is dissatisfied with the court's chosen formulations of those questions. A different situation occurs when only one party has requested a question and the court declines to give it. In that instance, a trial court reasonably may expect that the requesting party will disagree with the court's decision. To be sure, under Rule 4-323(c), an unstated expectation or assumption in the mind of the trial court does not relieve the requesting party of the obligation to make their position known to the court. However, where, as here, the trial court indicates awareness of disagreement about a question and further indicates that the requesting party need not reiterate their request for the question in order to preserve a claim of error, the requesting party reasonably should be able to rely on the court's promise of preservation.

counsel wanted the court to ask, had the court not referred to "what you previously objected to, which I will preserve for the record." However, a reasonable defense attorney could have concluded that the trial court was expressing its understanding that counsel had not abandoned his position that the court should give questions 2 and 22 as counsel had proposed them. Put another way, a reasonable defense attorney could have concluded that the trial court was effectively saying: "I already understand that you want me to ask the nonduplicative questions as you proposed them; you do not have to tell me that again. Is there anything else besides those questions that you want me to ask?"

The Majority disagrees, but its analysis is unconvincing. The Majority contends that, because defense counsel had not stated an objection during the discussion prior to the start of *voir dire*, counsel could not reasonably have interpreted the court's subsequent "previously objected" comment to mean that the court understood counsel still wanted the court to ask questions 2 and 22. *See* Op. at 17 n.7. But the Majority cannot get around the fact that the trial court told defense counsel that it was preserving counsel's previous objection(s) for the record. That had to mean something. Knowing that he had not previously expressly objected, defense counsel reasonably could have interpreted the court's comment to refer to something other than an express objection. The Majority does not offer a satisfactory explanation for why it would be unreasonable for defense counsel to have interpreted the trial court's comment as I have stated above. Instead, the Majority focuses on the trial court's state of mind, opining that the court "could have reasonably perceived that, by failing to object or indicate his disagreement, [Lopez-Villa] had abandoned [his requests for questions 2 and 22] or ultimately agreed with the court's

- 9 -

determination that they were unnecessary because the jury would be instructed on the law." Op. at 14-15. In a case lacking a comment like the one the trial court made here, the Majority's point would be well taken. However, we cannot ignore that the trial court materially altered the circumstances facing defense counsel by indicating that the court understood counsel to have "previously objected" and assuring counsel that such objection(s) were "preserved for the record." Once the trial court made that comment, defense counsel's state of mind necessarily came into play, thereby distinguishing this case from the cases discussed in the Majority Opinion. *See* op. at 10-14. And, as discussed above, counsel reasonably could conclude that he did not need to reiterate a request to give questions 2 and 22 in order to make his position known to the trial court. That being the case, defense counsel's "No" response following the trial court's preservation comment, contrary to the Majority's conclusion, should not be deemed a waiver of Lopez-Villa's right to object regarding questions 2 and 22. Rather, defense counsel reasonably could have believed that he was answering "No" to whether he wanted the court to ask any questions *besides* numbers 2 and 22 and those that were covered in other questions the court did ask.

The fundamental problem with the Majority's analysis is that it fails to recognize that a trial judge's comment concerning preservation can alter defense counsel's reasonable expectations of what is required of counsel at that moment in order to effectively preserve a claim of error. This is especially the case when the trial court and counsel are engaged in the dynamic and often hectic process of *voir dire*. The Majority's position apparently is that, even if defense counsel reasonably believes, based on the trial court's comments, that the court's adverse decision regarding a *voir dire* question is preserved for appellate review

without the need for an express objection, counsel must nevertheless make a confirmatory objection. I do not read Rule 4-323(c) or prior Maryland caselaw as imposing such a requirement. Nor should we engraft such a requirement onto Rule 4-323(c). If the trial court makes a statement that leads counsel reasonably to believe that the court is aware of counsel's position regarding an unasked question, counsel should not be required on the fly to consider and address alternative interpretations of the trial court's statement. Doing so imposes an unrealistic burden on defense counsel in the midst of jury selection. And doing so unfairly penalizes those defendants whose attorneys reasonably interpret a trial court's comments as indicating the court is aware of defense counsel's position, but who do not have the foresight to anticipate that an appellate court may disagree with their interpretation of the trial court's remarks.

This case highlights the problem. The Majority concludes that defense counsel waived a *Kazadi* claim of error by not telling the judge after the completion of the *voir dire* questions that he wanted the judge to ask questions 2 and 22. But imagine that defense counsel testifies at a postconviction hearing that the reason he did not say he still wanted the court to ask questions 2 and 22 was that he understood the court to have just told him that his claim of error with respect to those questions was preserved. Would the postconviction court find that trial counsel performed deficiently by interpreting the trial court's remarks that way and then acting accordingly? That we can imagine a scenario where a postconviction court would conclude that defense counsel acted reasonably in light of the trial court's preservation comment demonstrates the error of the Majority's approach.

This Court should not create the opportunity for a defendant like Lopez-Villa to be whipsawed in this manner.

To be clear, the trial court did nothing wrong in this case. The record reflects that the court was trying to conduct jury selection efficiently. To that end, the court tried to save some time by indicating to defense counsel that there was no need to reiterate that he wanted the court to ask the questions that the court had declined to ask. This was a practical and efficient way to proceed. We should acknowledge, however, that the trial court's statement reasonably could have led defense counsel to answer the court's question "No," whereas, in the absence of the court's comment, counsel might have answered "Yes" and gone on to expressly reference questions 2 and 22. For this reason, it is unfair to hold that Lopez-Villa failed to preserve a claim of error based on *Kazadi*.

## Conclusion

Lopez-Villa has a valid *Kazadi* claim, but the Majority's holding concerning preservation means that he will not obtain relief under *Kazadi*. The Majority reaches this conclusion even though defense counsel reasonably could have interpreted the trial court's statement at the bench to mean that the court was aware that counsel still wanted the court to ask questions now required under *Kazadi*. I would reverse the judgment of the Court of Special Appeals and remand this case for a new trial that complies with *Kazadi*.